**Affirmed in Part and Reversed and Remanded in Part and an Opinion by Each Member of the Panel filed November 27, 2013.**



In The

# Fourteenth Court of Appeals

### NO. 14-11-01055-CV

**FELICITA DEL CARMEN CANAS, AS NEXT FRIEND OF YENIFER ESTEFANI CANAS ESCOBAR, JAVIER ENRIQUE CANAS ESCOBAR AND BEATRIZ ABIGAIL DEL CARMEN CANAS, MINORS, Appellant**

**V.**

**CENTERPOINT ENERGY RESOURCES CORPORATION, Appellee**

**On Appeal from the 157th District Court
Harris County, Texas
Trial Court Cause No. 2011-08170**

## O P I N I O N

This is an appeal from a summary judgment in a wrongful-death action in which the decedent's children asserted claims against a natural gas provider based upon negligence, negligence per se, strict liability, gross negligence, negligent misrepresentation, and intentional misrepresentation. The trial court dismissed all

claims. On appeal, the three-member panel of this court is fractured, resulting in three separate opinions, two of which are part majority (those authored by Chief Justice Frost and Justice Christopher), and all of which are part dissents. Though the panel members disagree about much of the analysis, at least two of the three panel members agree with respect to the proper judgment for each claim.

As to the claims based upon negligence, negligence per se, and strict liability, this court affirms the trial court's judgment. As to these claims, section IV.A. of this opinion is a plurality opinion, with Justice Christopher concurring in the judgment, and Justice Jamison concurring in part in the judgment and dissenting in part. As to the gross-negligence claim, this court reverses the trial court's judgment and remands for further proceedings consistent with section C. of Justice Christopher's opinion, which is a majority opinion of the court as to the gross-negligence claim. Section IV.B. of this opinion is a dissenting opinion as to the gross-negligence claim. As to the intentional-misrepresentation and negligent-misrepresentation claims, this court reverses the trial court's judgment and remands for further proceedings consistent with section IV.C. of this opinion, which is a majority opinion of the court as to these two claims. As to the intentional-misrepresentation and negligent-misrepresentation claims, Justice Christopher concurs in the judgment as to the intentional-misrepresentation claim and dissents as to the negligent-misrepresentation claim.

In section IV.A. of this opinion, Chief Justice Frost concludes that the limitation of liability in the natural gas provider's tariff is reasonable and enforceable under the applicable legal standard for the filed-rate doctrine and that the trial court did not err to the extent it granted summary judgment based upon the tariff's limitation of liability regarding the claims based upon negligence, negligence per se, and strict liability. As to part of the gross-negligence claim, Chief Justice Frost concludes that the trial court's summary judgment should be

2

affirmed because the plaintiffs have not challenged one of the summary-judgment grounds on appeal, and Chief Justice Frost dissents to the extent that this court affirms the trial court's judgment as to this part of the gross-negligence claim. But, Chief Justice Frost concludes that it is proper for this court to reverse and remand the remainder of this claim. In section IV.C. of this opinion, the court, addressing the plaintiffs' intentional-misrepresentation and negligent-misrepresentation claims, determines that that trial court erred in granting summary judgment as to these claims, which the plaintiffs added after the defendant filed its summary-judgment motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant/plaintiff Felicita Del Carmen Canas, as next friend of Yenifer Estefani Canas Escobar, Javier Enrique Canas Escobar and Beatriz Abigail Del Carmen Canas, Minors (hereinafter the "Canas Parties") filed a wrongful death action against appellee/defendant CenterPoint Energy Resources Corporation (hereinafter "CenterPoint"). In their live petition the Canas Parties make the following allegations:

- On March 2, 2007, Guadalupe Del Carmen Canas ("Canas") was in her residence, a garage apartment located behind a house in Houston. Mary Betancourt owned both the house and the garage apartment.

- CenterPoint owned and operated the natural gas entering Canas's residence.

- Natural gas leaked from an underground corroded gas line located on the exterior of Betancourt's house, migrated underground through the soil, and into Canas's garage apartment, filling the apartment with dangerous levels of gas.

- As the gas migrated underground into Canas's residence, it became odorless or insufficiently odorized. The odorant placed in the gas by

3

CenterPoint was adsorbed by the soil.

- Rust and corrosion were visible on the pipes located next to the meter on the outside of the main residence and CenterPoint did not report this corrosion to anyone.

- At no time did CenterPoint warn Canas or Betancourt of the potential for gas to migrate into their homes when a corrosion leak or any other type of leak occurs. CenterPoint also failed to warn Canas or Betancourt that the gas, which migrates underground into structures, can become either deodorized or inadequately odorized, due to the odorant being adsorbed into the soil.

- As a result of the leak and the diminished odorant in the gas, the gas accumulated in the structure and was undetectable until so much gas filled the structure that it reached the lower explosive limit and ignited.

- CenterPoint has known for decades that corrosion in gas lines results in underground gas leaks which can and do cause gas to travel into someone's home or other structure in either an odorless or ineffectively odorized state due to the odorant being adsorbed in the soil. In addition, for at least a decade, CenterPoint's odorant suppliers have told CenterPoint to warn its customers about the dangers of odorant fade, but CenterPoint has failed to do so. CenterPoint has continued to fail to warn its customers, both before and after this incident. CenterPoint is also aware of many other gas explosions which have occurred in the same manner as the explosion in this case.

- An accumulation of gas inside Canas's residence caused an explosion which severely burned and injured Canas. The severe burns and injuries to Canas ultimately led to her death on March 20, 2007.

In their wrongful-death action, the Canas Parties assert claims for negligence, gross negligence, negligence per se, strict liability, intentional misrepresentation, and negligent misrepresentation.

CenterPoint moved for summary judgment on the following grounds:

(1)    Under the filed-rate doctrine, all of the Canas Parties' claims

4

for strict liability and negligence are barred by the gas tariff in effect on the date of the incident made the basis of this suit.

(2)     There is no evidence of CenterPoint's actual knowledge of a dangerous condition on Betancourt's property that caused the fire in question and therefore the Canas Parties have not established that CenterPoint owed any duty to Canas regarding such dangerous conditions.

(3)     Even absent any tariff, CenterPoint has no negligence liability to the Canas Parties because CenterPoint has no duty to inspect a customer's wiring, appliances, or the like before supplying gas to the customer and because CenterPoint is not liable for dangerous conditions on Betancourt's property due to the lack of any evidence that it had actual knowledge of any dangerous condition on Betancourt's property. Because CenterPoint has no negligence liability to the Canas Parties, it cannot be liable for gross negligence or negligence per se.

(4)     CenterPoint cannot be liable for gross negligence because a claim for gross negligence does not exist independent of an underlying negligence claim, and the Canas Parties' negligence claim fails as a matter of law.

The trial court granted CenterPoint's summary-judgment motion in its entirety and dismissed with prejudice all of the Canas Parties' claims. The trial court did not specify the summary-judgment grounds upon which it relied.

## II. ISSUES PRESENTED

On appeal, the Canas Parties present the following issues:

(1)     The trial court erred in granting a final summary judgment dismissing all of the Canas Parties' claims against CenterPoint.

(2)     CenterPoint's summary-judgment motion is directed at theories and claims not asserted by the Canas Parties in their petition. Because the motion does not specifically address the Canas Parties' claims, the trial court should not have granted it.

5

(3)     The trial court erred in granting summary judgment as to the misrepresentation claims that the Canas Parties added after CenterPoint filed its summary-judgment motion.

(4)     The trial court erred in applying the filed-rate doctrine to this case because the tariff in question is unreasonable as applied to these facts, and in contravention of the carefully constructed regulatory scheme governing natural gas safety.

(5)     The trial court erred in granting summary judgment as to the Canas Parties' gross-negligence claim.

## III. STANDARD OF REVIEW

In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). In reviewing a no-evidence summary judgment, this court ascertains whether the nonmovant pointed out summary-judgment evidence raising a genuine issue of fact as to the essential elements attacked in the no-evidence motion. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206–08 (Tex. 2002). In our de novo review of a trial court's summary judgment, this court considers all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, the summary judgment must be affirmed if any of the

6

independent summary-judgment grounds is meritorious. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex. 2000).

## IV. ANALYSIS

**A.** **Did the trial court err in granting summary judgment as to the claims based upon negligence, negligence per se, and strict liability?**

The trial court granted summary judgment on the ground that under the filed-rate doctrine, all of the Canas Parties' claims for strict liability and negligence are barred by the gas tariff in effect on the date of the incident made the basis of this suit.

The "filed-rate doctrine" applies when state law creates a state agency and a statutory scheme under which the agency determines reasonable rates for the service provided. *See Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 216 (Tex. 2002). Under this doctrine, when an administrative agency has approved a tariff containing provisions limiting liability for personal-injury damages, such a liability limitation is presumed reasonable unless a litigant proves otherwise. *See id*. at 220. Thus, under the doctrine, filed tariffs govern a utility's relationship with its customers and have the force and effect of law until suspended or set aside. *See id*. at 217. Additionally, under the filed-rate doctrine, regulated utilities cannot vary a tariff's terms with individual customers, discriminate in providing services, or charge rates other than those properly filed with the appropriate regulatory authority. *See id*. And, a utility's obligations to its customers cannot exceed its duties under a filed tariff. *See id*. It follows, then, that aggrieved customers cannot enforce alleged rights that contradict the tariff's provisions. *See id*. Consequently, the filed-rate doctrine prohibits a customer from suing a utility in contract or tort over issues that are governed by a publicly-filed tariff's terms. *See id*.

A regulatory agency's rate-making authority authorizes it to approve a

tariff's provision limiting liability because a limitation on liability is an inherent part of the rate the utility charges for its services. *See id.* The Supreme Court of Texas has applied the filed-rate doctrine to hold that a tariff provision that limits liability for economic damages arising from a utility's negligence is reasonable and that a tariff provision that limits liability for personal injury is reasonable. *See id.* at 219–222; *Houston Lighting & Power Co. v. Auchan USA, Inc.*, 995 S.W.2d 668, 672–75 (Tex. 1999). The high court likewise has determined that a tariff's limitation on liability for personal injury is reasonable because a utility: (1) must provide nondiscriminatory service to all customers within its area; (2) must maintain uniform rates and reduce costs; (3) cannot increase rates for all customers based on losses one specific class of customers incurs; and (4) must comply with administrative regulations. *See Grant*, 73 S.W.3d at 220–21. Courts review a tariff's reasonableness as a question of law. *See id.* at 219.

Under the Gas Utility Regulatory Act, the Texas Legislature codified the filed-rate doctrine in the Texas Utilities Code § 104.005(a). This section states:

> A gas utility may not directly or indirectly charge, demand, collect, or receive from a person a greater or lesser compensation for a service provided or to be provided by the utility than the compensation prescribed by the applicable schedule of rates filed under Section 102.151.

Tex. Util. Code § 104.005(a) (West 2013). *Entex, A Div. of Reliant Energy Res. Corp. v. R.R. Comm'n of Tex.,* 18 S.W.3d 858, 863 (Tex. App.—Austin 2000, pet. denied). The Railroad Commission of Texas is vested with all the authority and power of the State of Texas to ensure that gas utilities such as CenterPoint comply with their obligations under the Gas Utility Regulatory Act. *See* Tex. Util. Code § 104.001(a) (West 2013).

The summary-judgment evidence contains the CenterPoint tariff which was

in effect on March 2, 2007 (hereinafter, "Tariff"); this Tariff was filed with and approved by the Railroad Commission of Texas, and has the force and effect of law. *See Grant*, 73 S.W.3d at 222. The Canas Parties do not dispute that the Tariff was in effect at the time of the occurrence made the basis of this suit and contained the following provisions:

14. **ESCAPING GAS**

Immediate notice must be given to Company by Consumer of any escaping gas on Consumer's premises. No flame shall be taken near the point where gas is escaping and as an added precaution, the gas should immediately be shut off at the meter by Consumer. Company shall not be liable for any damage or loss caused by the escape of gas from Consumer's housepiping or Consumer's appliances.

. . .

17. **NON-LIABILITY**

(a) The Company shall not be liable for any loss or damage caused by variation in gas pressure, defects in pipes, connections and appliances, escape or leakage of gas, sticking of valves or regulators, or for any other loss or damage not caused by the Company's negligence arising out of or incident to the furnishing of gas to any Consumer.

(b) Company shall not be liable for any damage or injury resulting from gas or its use after such gas leaves the point of delivery other than damage caused by the fault of the Company in the manner of installation of the service lines, in the manner in which such service lines are repaired by the Company, and in the negligence of the Company in maintaining its meter loop. All other risks after the gas left the point of delivery shall be assumed by Customer, his agents, servants, employees, or other persons.

The Tariff defines "Point of Delivery" as "[t]he point where the gas is measured for delivery into Consumer's housepiping," and "Consumer's Housepiping" as

9

"[a]ll pipe and attached fittings which convey gas from the outlet side of the meter to the Consumer's connection for gas appliances." CenterPoint submitted summary-judgment evidence indicating that the holes in the pipe that the Canas Parties claim caused the gas leak were holes in Betancourt's housepiping, and the Canas Parties stated in their summary-judgment response that the holes that allegedly caused the leak were in a section of pipe that ran underground from the meter to the garage apartment. The Canas Parties have not argued on appeal that the alleged leak occurred before the gas left the Point of Delivery. Thus, it is undisputed that the alleged leak of gas occurred after the gas left the Point of Delivery.[1]

The Tariff also states that, "[u]nless otherwise expressly stated, these rules apply to all Consumers regardless of classification, except insofar as they are changed by or are in conflict with any statute of the State of Texas, valid municipal ordinance, valid final order of any court or of the Railroad Commission of Texas, or written contract executed by [CenterPoint], in which case such statute, ordinance, order or contract shall control to the extent that it is applicable to the Consumer(s) in question." The Canas Parties do not assert that the limitation of liability in the Tariff conflicts with a Texas statute, municipal ordinance, court order, Railroad Commission order, or written contract executed by CenterPoint, and the summary-judgment evidence does not raise any such conflict.

On appeal, the Canas Parties challenge the trial court's summary judgment regarding strict liability, common-law negligence, and negligence per se by asserting (1) the trial court should not have granted summary judgment because CenterPoint's summary-judgment motion is directed at theories and claims not asserted by the Canas Parties in their petition; (2) the trial court erred in enforcing

---

[1] The Canas Parties also agree that Canas was a consumer or customer of CenterPoint.

the Tariff's limitation of liability because the Tariff is unreasonable as applied to these facts, and (3) the trial court erred in enforcing the Tariff's limitation of liability because this limitation contravenes the carefully constructed regulatory scheme governing natural gas safety. These arguments are addressed seriatim.

On appeal, the Canas Parties assert that "CenterPoint is liable because it failed to warn [Canas] and [Betancourt] of the dangers of odorant fade" and that "nowhere in the petition is there an allegation that CenterPoint is liable for any other reason." Though the Canas Parties allege in the petition that CenterPoint is liable based upon its alleged failure to warn Canas and Betancourt of the dangers of odorant fade, the Canas Parties allege other acts and omissions as a basis for liability. The Canas Parties assert that the summary-judgment grounds in CenterPoint's motion were directed at theories and claims not asserted by the Canas Parties and that these grounds were not directed at the claims based upon CenterPoint's alleged failure to warn Canas and Betancourt of the dangers of odorant fade. This court cannot affirm the trial court's summary judgment on a ground not stated in the summary-judgment motion. *See Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993). Even so, one of the grounds stated in CenterPoint's summary-judgment motion is that under the filed-rate doctrine, all of the Canas Parties' claims for strict liability and negligence are barred by the gas tariff in effect on the date of the incident made the basis of this suit. This ground was sufficiently broad to cover the Canas Parties' claims seeking recovery based upon strict liability, common-law negligence, and negligence per se. *See Nall v. Plunkett*, 404 S.W.3d 552, 554–56 (Tex. 2013) (holding that summary-judgment grounds were broad enough to cover both social-host and undertaking theories of negligence) (per curiam); *Williams v. Sable*, No. 14-09-00806-CV, 2011 WL 238288, at *3 (Tex. App.—Houston [14th Dist.] Jan. 25, 2011, no pet.) (concluding that negligence per se is not a separate claim that exists independently

of a common-law negligence claim, rather it is merely one method of proving a breach of duty) (mem. op.); *Thomas v. Uzoka*, 290 S.W.3d 437, 445 (Tex. App.— Houston [14th Dist.] 2009, pet. denied) (same as *Williams*). Accordingly, it is proper for this court to overrule the Canas Parties' second issue as to these claims.

Under their fourth issue, the Canas Parties assert various arguments in support of the proposition that the Tariff's limitation of liability is unreasonable. Construing the provisions of the Tariff as a whole, it provides that CenterPoint may not be held liable under negligence[2] or strict-liability claims for any damage or injury resulting from gas or its use after the gas leaves the Point of Delivery, other than (1) damage caused by the fault of CenterPoint in the manner of installation of the service lines, (2) damage caused by the fault of CenterPoint in the manner in which CenterPoint repaired such service lines, and (3) damage caused by CenterPoint's negligence in maintaining its meter loop. Because it is undisputed that the alleged leak of gas occurred after the gas left the Point of Delivery, the actual damages sought by the Canas Parties allegedly resulted from gas or its use after the gas left the Point of Delivery.[3] The Canas Parties have not alleged any damages that fall into any of the three exceptions to the Tariff's

---

[2] This conclusion applies both as to negligence claims based upon common-law negligence and negligence claims based upon negligence per se. In the negligence per se part of their petition, the Canas Parties allege that CenterPoint's alleged violation of various regulations proximately caused Canas's death, resulting in their wrongful-death damages. The regulations that CenterPoint allegedly violated include (1) title 49, sections 192.616, 192.617, and 192.625 of the Code of Federal Regulations, (2) "Texas Administrative Code §8.1(b)," (3) "Texas Administrative Code §8.215(a)(1)," (4) "Texas Administrative Code §8.215(c)(3)," and (5) "Texas Administrative Code §8.220(a)."

[3] The Canas Parties assert they are not suing CenterPoint for allowing the gas leak but for failing to warn of the dangers of odorant fade. Though the Canas Parties allege that CenterPoint's alleged failure to warn of the dangers of odorant fade proximately caused Canas's death, they also allege that Canas's death was caused by the ignition of gas that leaked from an underground corroded gas line, and it is undisputed that this alleged gas leak occurred after the gas left the Point of Delivery. Thus, the Canas Parties' claims are for damage or injury resulting from gas or its use after the gas left the Point of Delivery.

limitation of CenterPoint's liability regarding such damages, and they do not argue on appeal that any of their claims fall under one of these three exceptions. Thus, the Tariff precludes the Canas Parties' recovery under their negligence, negligence per se, and strict-liability claims unless the Canas Parties established that the limitation of liability in the Tariff is unreasonable. *See Grant*, 73 S.W.3d at 219–22.

The Canas Parties assert that this limitation is unreasonable and unenforceable in its entirety because it purports to limit liability for CenterPoint's gross negligence. Like the tariff that the *Grant* court concluded was reasonable, the Tariff does not exclude personal-injury claims against CenterPoint that arise from CenterPoint's negligence in all contexts. *See id*. at 220. As discussed below, as in *Grant*, this court does not have before it the issue of whether the Tariff limits liability for personal-injury claims based upon CenterPoint's alleged gross negligence or willful misconduct. *See id*. at 219–22. But, the tariff in *Grant* contained an express provision stating that the limitation of liability did not apply to damages caused by the gross negligence or willful misconduct of the utility company. *See id*. at 220. Notably, the Tariff does not contain such an express exception to the limitation of liability, nor does it contain any express reference to gross negligence or willful misconduct. The facts in today's case are not the same as those in *Grant*. The parties have not cited, nor has research revealed, any Texas case addressing limitation-of-liability provisions in a tariff under these circumstances.

Nonetheless, under the legal standard applied by the Supreme Court of Texas in *Grant*, the limitation of liability in the Tariff as to negligence and strict-liability claims is reasonable and enforceable, regardless of whether the Tariff covers claims based on gross negligence and willful misconduct or whether such a limitation of liability is reasonable. *See id*. at 219–22. If the limitation of liability

13

in the Tariff were construed not to apply to gross-negligence and willful-misconduct claims, then, as in *Grant*, these claims would be available and this availability would support the conclusion that the limitation of liability is reasonable. The parties have not cited, and research has not revealed, any Texas case addressing whether the presence in a tariff of an unreasonable and unenforceable limitation of liability for certain claims would make the entire limitation of liability unenforceable. If the limitation of liability in the Tariff were construed to apply to gross-negligence and willful-misconduct claims and the limitation of liability for such claims were held to be unreasonable and unenforceable, then Texas courts would hold that, the limitation of liability still may be enforced as to negligence and strict-liability claims. *See Danisco Ingredients USA, Inc. v. Kansas City Power & Light Company*, 986 P.2d 377, 769–74 (Kan. 1999). Thus, in this second circumstance, claims based on gross negligence and willful misconduct would be available, as in *Grant*, and this availability would support the conclusion that the limitation of liability is reasonable. The third possibility is that the limitation of liability in the Tariff is construed to apply to claims based on gross negligence and willful misconduct, and the limitation of liability as to such claims is held to be reasonable and enforceable. In this event, if the limitation of liability as to gross-negligence and willful-misconduct claims is reasonable, then the limitation of liability as to negligence and strict-liability claims necessarily would be reasonable and enforceable. Under the legal standard applied by the Supreme Court of Texas in *Grant*, the limitation of liability in the Tariff as to negligence and strict-liability claims is reasonable and enforceable. It is not necessary to decide whether the limitation of liability in the Tariff covers claims based on gross negligence and willful misconduct or whether

14

such a limitation of liability is reasonable, and no position on this issue is taken in this opinion.[4]

The Canas Parties also assert that if paragraph 14 of the Tariff were "an entirely enforceable exculpatory clause," it would relieve CenterPoint of its duty to provide natural gas that is readily detectible to a person with a normal sense of smell, as required by title 49, section 192.625 of the Code of Federal Regulations and title 16, section 8.215 of the Texas Administrative Code. The Canas Parties assert that giving effect to paragraphs 14 and 17(b) of the Tariff in this instance would vitiate this "carefully crafted regulatory scheme," as well as title 49, sections 192.616 and 192.16 of the Code of Federal Regulations.

But, none of these regulations provide that a failure to comply with the regulation will result in tort liability to parties injured as a result of the failure to comply. The parties have not cited, and research has not revealed, any case in which a court holds that a failure to comply with any of these regulations will result in tort liability to parties injured as a result of such a failure to comply. The enforcement of the Tariff's limitation of liability as to the Canas Parties' claims based on negligence, negligence per se, and strict-liability does not vitiate or conflict with these regulations or relieve CenterPoint of any obligation to comply with these regulations.

The Canas Parties also note that, under Paragraph 14 of the Tariff, "[i]mmediate notice must be given to Company by Consumer of any escaping gas on Consumer's premises." The Canas Parties assert that this requirement presumes that consumers will recognize the escape of gas by the presence of odorant. The Canas Parties suggest that the Tariff's limitation of liability should not apply to

---

[4] Justice Christopher addresses this issue and concludes that a limitation of liability for personal injuries caused by CenterPoint's gross negligence or willful misconduct is unenforceable. She states that she disagrees with the analysis in this opinion to the contrary. *See post* at p.2–3. Because this opinion does not address this issue, there is no contrary analysis.

15

cases allegedly involving odorant fade, because Paragraph 14 presumes the presence of odorant. Though odorant certainly assists consumers in that it makes it more likely that a consumer will be aware of escaping gas, a consumer could become aware of escaping gas even without detecting the odorant. In any event, a consumer cannot give CenterPoint notice of a fact of which the consumer is not aware. This notification requirement does not remove claims involving alleged odorant fade from the scope of the Tariff's limitation of liability.

As to the Canas Parties' claims based upon negligence, negligence per se, and strict liability, the Tariff's limitation of liability is reasonable and enforceable under the legal standard applied by the Supreme Court of Texas in *Grant*. *See Grant*, 73 S.W.3d at 219–22. The Canas Parties' appellate arguments as to why the trial court erred in granting summary judgment regarding common-law negligence, negligence per se, and strict liability lack merit. Thus, the trial court did not err to the extent it granted summary judgment as to these claims based upon the Tariff's limitation of liability. Accordingly, it is correct for this court to overrule the Canas Parties' fourth issue as well as their first issue to the extent that issue addresses the Canas Parties' claims based upon negligence, negligence per se, and strict liability.

## B.  Did the trial court err in granting summary judgment as to the Canas Parties' gross negligence claim?

At no point in its summary-judgment motion did CenterPoint assert that the Tariff bars the Canas Parties' gross-negligence claim.[5] Instead, as to this claim,[6]

---

[5] CenterPoint asserts that it specifically moved for summary judgment based on the filed-rate doctrine as to "all of the [Canas Parties'] negligence claims, including gross negligence." Justices Christopher and Jamison agree. But, for the purpose of determining summary-judgment grounds, gross-negligence claims should not be considered to be included within the scope of the term "negligence claims." *See Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 22 (Tex. 1994) (emphasizing important distinctions between gross negligence and negligence); *Van Voris v. Team Chop Shop, LLC*, 402 S.W.3d 915, 926 (Tex. App.—Dallas 2013, no pet.) (same as

16

CenterPoint asserted the following summary-judgment grounds in its motion: (1) even absent any tariff, CenterPoint has no negligence liability to the Canas Parties, and therefore no gross-negligence liability, because under the common law CenterPoint has no duty to inspect a customer's wiring, appliances, or the like before supplying gas to the customer and because CenterPoint is not liable for dangerous conditions on Betancourt's property due to the lack of any evidence that it had actual knowledge of any dangerous condition on Betancourt's property ("First Ground"); (2) a gross-negligence claim does not exist independent of an underlying negligence claim, and the Canas Parties' negligence claim fails as a matter of law ("Second Ground").

In their appellants' brief, the Canas Parties assert the following arguments that relate to the gross-negligence claim: (1) CenterPoint's motion should not have been granted because it is directed at theories and claims not asserted by the Canas Parties in their petition rather than their claim based on an alleged failure to warn of deodorized gas; (2) even if the Tariff bars the Canas Parties' negligence claim, that bar does not mean that the Canas Parties cannot recover under their gross-negligence claim; (3) the trial court erred to the extent it held that the Tariff barred the Canas Parties' gross-negligence claim; (4) CenterPoint's grounds based on the absence of a duty to inspect or repair the housepiping cannot support the judgment because the Canas Parties' claims do not rely on such a duty; (5) this court should reverse and remand the gross-negligence claim because CenterPoint made no mention of this claim in its summary-judgment reply; and (6) the Canas Parties do

---

*Moriel*). In its summary-judgment motion, CenterPoint did not state as a ground that the filed-rate doctrine or the Tariff bars the Canas Parties' gross-negligence claim. Therefore, the trial court's judgment cannot be affirmed on such a ground. *See Stiles*, 867 S.W.2d at 26.

[6] In their live pleading, the Canas Parties seek to recover both actual and exemplary damages based upon CenterPoint's alleged gross negligence.

not allege that CenterPoint had actual knowledge of any dangerous condition on the property, and such an allegation is not an element of any claim asserted in the Canas Parties' petition.

The Canas Parties' second and third arguments do not apply to the First Ground. In their fifth argument, the Canas Parties assert that, by failing to mention the gross-negligence claim in its summary-judgment reply in the trial court, CenterPoint implicitly conceded that the gross-negligence claim should have survived summary judgment and therefore this court should reverse the summary judgment as to this claim. This argument lacks merit. CenterPoint's failure to mention the gross-negligence claim in its summary-judgment reply did not amount to a concession that CenterPoint was not entitled to summary judgment as to this claim.

In their first, fourth, and sixth arguments, the Canas Parties assert that (1) CenterPoint's summary-judgment grounds did not attack any theory or claim asserted in the Canas Parties' petition; (2) the Canas Parties make no complaint about a leak in the housepiping; (3) in their claims, the Canas Parties do not rely on a duty by CenterPoint to inspect or repair the housepiping; and (4) the Canas Parties do not allege that CenterPoint had actual knowledge of any dangerous condition on the property, nor is such an allegation an element of any claim asserted in the Canas Parties' petition. But, liberally construing the Canas Parties' live pleading, some of the allegations are based on dangerous conditions.[7] On appeal, the Canas Parties have not challenged the First Ground. Accordingly, as to the First Ground, this court should overrule the fifth issue and the correlative part

---

[7] For example, the Canas Parties allege that CenterPoint was negligent and grossly negligent in various ways, including when it "failed to warn the homeowner about migrating gas from underground gas leaks" and when it "failed to warn [Canas] about migrating gas from underground gas leaks."

18

of the first and second issues.[8] *See In re A.M.P.*, 368 S.W.3d 842, 845 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (affirming summarily trial court's summary judgment as to one claim because appellant did not challenge on appeal all independent summary-judgment grounds as to that claim). This court should affirm the trial court's summary judgment to the extent that the Canas Parties base their gross-negligence claim on a duty to inspect a customer's wiring, appliances, or the like before supplying gas to the customer and to the extent that the Canas Parties seek to impose gross-negligence liability on CenterPoint for a dangerous condition on Betancourt's property.[9] Because it does not do so, I respectfully dissent to this part of the court's judgment.

In the Second Ground, CenterPoint asserts that it cannot be held liable for gross negligence because a claim for gross negligence does not exist independent of an underlying negligence claim, and the Canas Parties' negligence claim fails as a matter of law. To the extent the Second Ground is based on the failure of the negligence claim because it is barred by the Tariff, this ground lacks merit. When liability for negligence or strict liability is barred by a limitation of liability in a utility's tariff, this bar does not, by itself, compel the conclusion that gross-negligence claims are also barred on the theory that gross-negligence claims do not exist independent of an underlying negligence claim. *See Grant*, 73 S.W.3d at 215, 220–22 (holding that limitation of liability in utility's tariff was reasonable and unenforceable and barred negligence claims, while noting that utility still was subject to gross-negligence liability). This ground fails under the reasoning of the *Grant* court. *See Grant*, 73 S.W.3d at 220–22. In the context of explaining why

---

[8] Because the Canas Parties have not challenged the First Ground, this court need not and should not address the merits of this ground.

[9] This court would not be affirming the part of the trial court's judgment in which the trial court dismissed the Canas Parties' gross-negligence claim based on CenterPoint's alleged gross negligence in failing to warn Canas or Betancourt of the dangers of odorant fade.

the limitation of liability in a utility's tariff barred negligence claims, the *Grant* court noted that the utility still was subject to gross-negligence liability. *See id*. The plaintiff in *Grant* did not assert a gross-negligence claim. *See id*. at 214–15. Nonetheless, if a tariff's bar as to negligence liability necessarily meant that any gross-negligence claims also were barred, then the *Grant* court would not have stated that the utility still was subject to potential liability for gross negligence. *See id.* at 220–22. In other contexts, the absence of a common-law negligence duty or the plaintiff's failure to prove a negligence claim also may preclude recovery under a gross-negligence claim. *See RT Realty, L.P. v. Tex. Util. Elec. Co.*, 181 S.W.3d 905, 914–16 (Tex. App.—Dallas 2006, no pet.) (holding that, because claimant offered no evidence that electric utility owed a negligence duty the gross negligence claim failed as a matter of law); *Wortham v. Dow Chemical Co.*, 179 S.W.3d 189, 202–03 & n.16 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (stating that a claimant who cannot support a negligence claim cannot succeed on a gross-negligence claim and concluding that there was no evidence raising a fact issue as to plaintiff's negligence claims); *Shell Oil Co. v. Humphrey*, 880 S.W.2d 170, 174–78 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (holding that, because defendant did not owe negligence duty to plaintiff there could be no liability for gross negligence). The only summary-judgment ground other than the filed-rate doctrine directed at the negligence claims was that under the common law CenterPoint has no negligence duty to inspect a customer's wiring, appliances, or the like before supplying gas to the customer and CenterPoint is not liable for dangerous conditions on Betancourt's property due to the lack of any evidence that it had actual knowledge of any dangerous condition on Betancourt's property. But, for the reasons stated above, this court should affirm the trial court's summary judgment as to the gross-negligence claim to the extent that the Canas Parties base this claim on a duty to inspect the customer's wiring, appliances, or the like before

20

supplying gas to the customer and to the extent that the Canas Parties seek to impose gross-negligence liability on CenterPoint for a dangerous condition on Betancourt's property. Therefore, as to the remaining part of the gross-negligence claim, the only summary-judgment ground asserted regarding the corresponding negligence claim was the filed-rate doctrine. In this situation, the cases upon which CenterPoint relies are not on point. *See RT Realty, L.P.*, 181 S.W.3d at 914–16; *Wortham*, 179 S.W.3d at 202–03 & n.16; *Humphrey*, 880 S.W.2d at 174–78. In this context, when liability for negligence is barred by a limitation of liability in a utility's tariff, this bar does not, alone, compel the conclusion that gross-negligence claims are also barred on the theory that gross-negligence claims do not exist independent of a negligence claim. *See Grant*, 73 S.W.3d at 215, 220–22. *See also Van Voris v. Team Chop Shop, LLC*, 402 S.W.3d 915, 924–26 (Tex. App.—Dallas 2013, no pet.) (holding that gross-negligence claim did not fail, even though the negligence claim was barred by an enforceable pre-injury release). Because CenterPoint asserted no meritorious summary-judgment ground as to the remainder of the gross-negligence claim, it is correct for this court to sustain the fifth issue and the correlative part of the first issue to this extent, reverse the trial court's judgment as to the remainder of this claim, and remand for further proceedings.[10]

## C.   Did the trial court err in granting summary judgment as to the Canas Parties' misrepresentation claims?

After CenterPoint filed its summary-judgment motion, the Canas Parties amended their petition and added misrepresentation claims. Regarding these

---

[10] Because of this determination, this court need not address the part of the second issue that corresponds to the Second Ground. The remanded portion of the trial court's judgment would include the part in which the trial court dismissed the Canas Parties' gross-negligence claim based on CenterPoint's alleged gross negligence in failing to warn Canas or Bentancourt of the dangers of odorant fade.

claims, the Canas Parties alleged that CenterPoint represents to the public that the natural gas it supplies contains an odorant which gives a warning to its customers if a leak occurs, so they can take necessary actions for their safety. The Canas Parties allege that CenterPoint knows that sometimes the gas will migrate through the soil, either becoming insufficiently or completely deodorized, allegedly resulting in a situation in which the public has either no warning or too-little warning of a gas leak, even though such a leak may be occurring in their vicinity. According to the Canas Parties, this misrepresentation involves a material fact and Canas or Betancourt relied upon this representation in purchasing the natural gas in question. Under a liberal construction of their petition, the Canas Parties have alleged claims for intentional misrepresentation and for negligent misrepresentation.

Reversal is not always necessary when a party amends her petition after an opposing party files a motion for summary judgment if (1) the amended petition essentially reiterates previously pleaded claims, (2) a ground asserted in a motion for summary judgment conclusively negates a common element of the newly and previously pleaded claims, or (3) the grounds in the original motion are broad enough to encompass the newly asserted claims. *See Coterill-Jenkins v. Texas Medical Ass'n Health Care Liability Claim Trust,* 383 S.W.3d 581, 592 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). The Canas Parties added new intentional-misrepresentation and negligent-misrepresentation claims in their amended pleading, in which the Canas Parties did not reiterate previously pleaded claims. No ground asserted in the summary-judgment motion conclusively negates a common element of the newly and previously pleaded claims. In their new claims for negligent misrepresentation and intentional misrepresentation, the Canas Parties added a new allegation that CenterPoint made a material misrepresentation. In the context of this case, these new misrepresentation claims are materially

22

different from the Canas Parties' other claims for negligence, negligence per se, strict liability, and gross negligence. In its summary-judgment reply, CenterPoint noted that the Canas Parties had amended their petition after CenterPoint filed its summary-judgment motion, asserting for the first time a misrepresentation claim. CenterPoint then stated, "CenterPoint realizes the Court cannot grant a final summary judgment given this new claim. CenterPoint intends to file another summary judgment on this new theory." We conclude that the grounds in CenterPoint's summary-judgment motion are not broad enough to encompass the newly asserted claims for intentional misrepresentation and negligent misrepresentation. Thus, the trial court erred to the extent it granted summary judgment as to these claims.[11] *See Coterill-Jenkins*, 383 S.W.3d at 592. Accordingly, we sustain the third issue and the first issue, to the extent it addresses these claims; we reverse the trial court's judgment as to the claims for intentional misrepresentation and negligent misrepresentation and remand for further proceedings consistent with section IV.C. of this opinion.

## V. CONCLUSION

As to the claims based upon negligence, negligence per se, and strict liability, this court affirms the trial court's judgment. As to the gross-negligence claim, this court reverses the portion of the trial court's judgment addressing the gross-negligence claim for the reasons stated in section C of Justice Christopher's opinion, and remands for further proceedings consistent with section C of Justice Christopher's opinion. The trial court erred to the extent it granted summary judgment as to the intentional-misrepresentation and negligent-misrepresentation claims, which were added after CenterPoint filed its summary judgment motion.

---

[11] In reversing the summary judgment as to the intentional-misrepresentation and negligent-misrepresentation claims, we do not comment on or address the merits of these claims.

Accordingly, this court reverses the portion of the trial court's judgment addressing the intentional-misrepresentation and negligent-misrepresentation claims, and remands for further proceedings consistent with section IV.C. of this opinion.


/s/    Kem Thompson Frost
Chief Justice


Chief Justice Frost and Justices Christopher and Jamison (Christopher, J. and Jamison, J., each writing a separate opinion).